## JURISDICTION OF PROBATE COURT AND OF MAYOR UNDER THE BEAL LAW.

[Common Pleas Court of Williams County.]

FRANK B. WELLS v. THE STATE OF OHIO.

Decided, November 6, 1903.

*Beal Law—"Merits of the Proceedings"—As to Which the Probate Court Has Final Jurisdiction—Probate Court Without Power to Declare Act Unconstitutional—Penalties Not Excessive—Trial of the Accused—Mayor May Try or Bind Over—Accused Not Entitled to Jury.*

1. The "merits of the proceedings" with reference to an election held under the Beal Municipal Local Option Law, which the probate court is given final jurisdiction to hear and determine, includes all matters touching or in any way relating to and affecting the question, whether or not the election has been held in conformity with the statute authorizing such an election, and prescribing conditions under which it may be held, the manner of ordering, giving of notice, conducting, etc.

2. Such grant of authority does not include power on the part of the probate judge to hear and determine whether the law itself is constitutional or otherwise; and where a probate judge goes further, and makes a finding that the act itself is void on constitutional grounds, his action is *coram non judice* as to that finding, and the case stands as it would have stood had the finding been limited to matters as to which the probate judge had jurisdiction.

3. Error does not lie to the action of a mayor who refused to carry into effect such a judgment declaring the act unconstitutional; nor was there warrant, previous to the recent decision of the Supreme Court, for the mayor himself declaring the act unconstitutional.

4. The penalties provided under the Beal Law do not shock the common sense of justice and humanity nor fall with the constitutional inhibition as excessive.

5. One accused of a misdemeanor has no right to insist on trial before any particular court, and it is within the jurisdiction of a mayor to try one accused under the Beal Law, or bind him over, and it is not error to overrule an application for trial before a jury.

HUBBARD, J.

This is a petition and proceeding in error to reverse the judgment of the mayor of the village of Edon, in this county, in the case of *The State of Ohio* v. *Frank Wells,* then pending before

said mayor, on the affidavit of one R. D. Scott, whereby it is charged that "from the 4th day of March, 1903, until the 27th day of March, 1903, at the village of Edon, county of Williams and state of Ohio, one Frank Wells then and there being, did unlawfully keep a place where intoxicating liquors were then and there sold as a beverage. That the said Frank Wells was not then and there a regular druggist, and was not then and there a manufacturer of intoxicating liquors from the raw material. That the keeping of said place as aforesaid by the said Frank Wells was then and there prohibited and unlawful and contrary to the statutes in such case made and provided."

Without enumerating the several rulings, acts and decisions of said mayor, it is sufficient to say, that, if the contentions of the plaintiff in error are correct, there is serious and substantial error in the record, prejudicial to the said plaintiff in error, which will warrant and compel the reversal of the judgment of said mayor in this proceeding; and that all of the rights of said plaintiff in error have been fully preserved, and appear on the face of the transcript of said mayor's docket and the bill of exceptions allowed by him, which forms the record before this court for review.

Considering the questions thus presented by the record, for the purpose of determining the merits of said contentions of said plaintiff, in their logical order and as briefly as possible, we find that the State relied on a copy of the record of the result of a certain election held in said village of Edon, on the 2d day of February, 1903, to prove that, at the time and place charged in the affidavit, the keeping of the place therein specified, for the purpose therein charged, was prohibited and unlawful; which said copy was in the words and figures following and certified as follows:

"EDON, OHIO, April 7, 1903.

"I, Charles F. Eyester, clerk of said village, hereby certify that the following is a correct copy of the record of the result of the local option election held in said village February 2d, 1903.

"The State of Ohio, County of Williams, Municipal Corporation of Edon.—The special election held on the 2d day of February, A. D., nineteen hundred and three (1903), within and for the municipal corporation of Edon, under the local option law, resulted as follows: Whole number of votes for the sale of intoxicating liquors as a beverage, seventy-eight (78); whole number

of votes against the sale of intoxicating liquors as a beverage, one hundred and twenty-seven (127).

"C. F. EYESTER,
"Clerk of Edon, Ohio." ·

That the defendant below relied upon the record of the probate court of this county, "In the matter of the contest of the local option election at the village of Edon, Ohio," to prove that said election was illegal and void, and had been so determined and adjudged by said probate court, under and by virtue of the provisions of R. S., 4364-20i, and in conformity therewith; and thereby to overcome the prima facie evidence of the fact sought to be proved by said certified copy of the record of the result of said alleged action, and thus disprove the truth of the charge so made against him by said affidavit.

This record shows that within the time limited in Section 4364-20i one H. M. Kelly, a qualified elector of said village, duly contested said election of February 2, 1903, in the manner described in said section; that his petition set forth five separate grounds of contest; that all the proceedings in the matter of said contest, prior to the time set for the hearing thereof, were had in substantial conformity with the provisions of said Section 4364-20i. It appears from the journal entry of the proceedings had in said matter, on that day, to-wit, the 11th day of March, 1903, that a motion on behalf of the village to strike from the petition the first alleged ground of contest was submitted to the probate court and by it overruled; that, on the hearing, the petitioner, in open court, withdrew from the consideration of the court the grounds of contest numbered two and four, and waived all claims of insufficiency of notice to the electors of said village of the time and place of holding the election contested. This left the remaining grounds numbers one, three and five on which alone the contest was submitted to the probate court. By the third ground, the regularity and legality of the meeting of the council, at which said special election was ordered and the time and place of holding the same fixed, was attacked; and by the fifth ground, the proceedings of the mayor as well as the council in ordering said election were alleged to be unlawful, illegal, null and void, for that they did not proceed according to law. The first ground is in the words and figures following, to-wit:

"That the said local option law, passed as aforesaid, by the General Assembly of said State of Ohio, on said 3d day of April, A. D. 1902, was and is unconstitutional for the said law is not one of a uniform nature and is not one of a general nature, and does not, has not, and can not have, a uniform operation throughout the said state of Ohio, and is in contravention of and repugnant to section one, article fourteen of the Constitution of the United States, and article two and section twenty-six of the Constitution of the State of Ohio."

Said journal entry of March 11, 1903, which is found on pages 139 and 140 of Journal No. 19 of said probate court, proceeds as follows:

"And the court, having heard the evidence upon the remaining grounds of contest alleged, does find that the grounds of contest numbers three and five are not well taken, and that no irregularity obtained upon the part of the council of said village and the mayor thereof, or either thereof, in and about ordering said election; and the court coming now to the consideration of the first ground of contest, does find the same well taken and does sustain the same, and the court does hold that the so-called Beal Municipal Local Option Law, being the act of the General Assembly of the State of Ohio, passed on the 3d day of April, 1902, and printed in Volume 95, on pages 87 to 91, inclusive, of the Laws of Ohio, is repugnant to the Constitution of the United States and to the Constitution of the State of Ohio, in respect to the section of said law numbered 4364-20$b$, the provisions whereof the courts finds repugnant to said Constitutions as aforesaid. And the court considering said part and section of the law to be repugnant to said Constitutions as aforesaid, it is by the court considered and adjudged and held that the pretended election held in said village of Edon, Williams county, Ohio, February 2, 1903, purporting to be held under said law, was an illegal and invalid election, and was and is without force and effect, and it is therefore ordered and adjudged that said election and the pretended results thereof be, and the same are hereby, set aside and held for naught, and it is ordered that the said village of Edon pay the costs of this proceeding, taxed at $———."

It also appears that a petition in error to reverse this alleged judgment of the probate court was filed in this court, by the mayor; but it was never affirmed, reversed or modified; and, although not appearing of record herein, it is conceded by counsel that said petition in error was never presented to this court, but was voluntarily dismissed by the mayor. We must therefore treat said judgment of the probate court, as now and at all

times since its entry and rendition, as having whatever force and effect it originally had and was entitled to.

And so the first question for determination is: What was its original force and effect?

This depends upon the nature and extent of the jurisdiction of the probate court in a contest of such an election as this, and we must first look to the provisions of Section 4364-20$i$, which purport to authorize such contests; but as the terms of said section are somewhat vague, we should consider them in the light of like provisions in other cases and any decisions thereon, the apparent purpose sought to be accomplished by the Legislature in passing Section 4364-20$a$, applying the usual rules of construction and interpretation. The language of the last mentioned section, in so far as the same relates to the question before us, is as follows:

"Any person being a qualified elector of any municipal corporation wherein an election shall have been held as provided for in this act may contest the validity of such election by filing a petition duly verified with the probate court of the county in which such municipal corporation is situated, within ten days after the election, setting forth the grounds for contest.

"The probate judge shall have final jurisdiction to hear and determine the merits of the proceedings, and in other respects in the procedure of the hearing he shall be governed by the law providing for the contesting of an election of a justice of the peace so far as the same is applicable."

What is the true intent, meaning and effect of the term "merits of the proceedings," which the probate judge is thus given final jurisdiction to hear and determine? There can be no possible doubt that it includes all matters touching or in anywise relating to and affecting the question of whether or not the election has been had and held in conformity with the sections of the statutes authorizing the same and prescribing the conditions upon which it may be held and the manner of ordering, conducting and giving notice of the same, the result thereof, and whether or not there has been any bribery, intimidation or interference with the rights of voters which have affected such result and prevented a fair election, etc.

But, does it include a grant of power to hear and determine the question of whether or not the law itself is constitutional or otherwise? The section under consideration contains no such express grant, nor is it included in the general jurisdiction conferred upon

the probate court by Article IV, Section 8, of the Constitution of Ohio, or by any other act of the General Assembly thereof. And, unless it be found to be included in the term referred to, the probate court never had any jurisdiction. It will be observed that Section 4364-20i refers to the law providing for the contesting of an election of a justice of the peace, and provides that in other respects in the procedure of the hearing the probate judge shall be governed thereby, in so far as the same is applicable. In the statute so referred to, the contest is required to be tried by three respectable freeholders of the county, not residents in the township in which such election was held, who are to be appointed by the probate judge, summoned to appear for that purpose, and sworn "to try such contest agreeable to the evidence." They are the sole triers of the contest, the probate judge having no part in their decision, his only duty being to exclude from their hearing and consideration all evidence "but such as relates to the points stated in the notice," and to attesting the signing of the decision of such contest by said freeholders when such trial is closed. The further provisions of said law referred to, being that:

"If by such decision, there is a vacancy in the office of the justice of the peace, the judge shall, within three days thereafter, transmit a copy of such decision to the trustees of the township, or the clerk thereof if there are no trustees, who shall forthwith give notice to the electors to fill such vacancy as in other cases; but if by the decision, the election remains good, he shall transmit the same to the clerk of the court of common pleas, who shall immediately proceed as if no contest had taken place."

From the language and context of the said provisions of Section 4364-20i, it seems to us clear, that the sole intent and effect thereof is to substitute the probate judge for the three freeholders, as triers of the contest, with such further change in the procedure of the hearing as is made necessary and proper by such substitution and that these provisions do not and were not intended to confer upon the probate court any additional or different power, authority or jurisdiction than the freeholders would have had, if the decision and determination of the contest had been committed to them, instead of to the probate judge.

We suppose no one, whether judge, lawyer or layman, would hold or contend that, in the contest of the election of a justice, the freeholders could pass upon and decide the law under which such

election was held to be void; or that a determination by them that there was a vacancy in the office, which appeared by the decision itself to be based on a finding by them that such law was unconstitutional, would be of any force or effect whatsoever. This would be to empower three unlearned men to overthrow the work of the General Assembly, often without any reasonable or sufficient cause whatever, and to do that which is only done by the courts with the greatest reluctance and caution and for the most convincing reasons. But that they could not proceed on such ground is clearly shown by the effect to be given to their decision. The trustees or clerk are to give immediate notice to the electors to fill the vacancy.

How could the electors do this, if the decision of the freeholders that the election contested was invalid and that there was a vacancy in the office, on the ground that the law authorizing and providing for such election was unconstitutional and void, should be of any effect whatever. For in that case any election under the same law to fill such vacancy would be absolutely void for the same reason. And so, in the case at bar, without determining whether or not, on the determination by the probate court that the election is illegal and invalid based on proper grounds, a new election under the Beal Law might be immediately ordered and held, or that the question could not be again submitted to the electors, except on the filing of a new petition after the lapse of two years, as provided by Section 4364-20$h$; in either case, a decision that the election was illegal and void, if such decision was upon the ground of the unconstitutionality of the law, and the probate judge had power to act upon that ground in making such decision, no legal or valid election under such law, could ever thereafter be held in said village.

So that, such a decision by the probate judge would not only be a determination of the invalidity of the election so contested in the pending case before him, and that the proceedings therefor were without merit, but it would have the effect of a determination, in advance, that any subsequent election held under the same law would be illegal and invalid; and any and all proceedings thereafter had for such a new election would be without merit. And that, too, although the court of last resort, in other cases arising outside of the village of Edon, should hold said law to be constitutional and valid and of full force and effect. But this is

not all. Let us suppose that in the present case the probate judge had decided said law to be constitutional and valid and had sustained the validity of said election; and this same prosecution had been had before the mayor, and the plaintiff in error had sought to defend on the ground that said law was unconstitutional, and the election thereunder consequently void, could it be successfully claimed that he would be barred from maintaining such defense? Most certainly not; nor do we believe that counsel in this case would contend otherwise. We can not for a moment think that the Legislature in the enactment of Section 4364-20$i$, contemplated or intended such a result. And, even if it did, in our opinion it would have been an act exceeding their constitutional powers. It is a very different thing to provide a means for determining the facts as to what was actually done in a particular case, as for instance the holding of an election, the passage of a law or ordinance or the like, and whether or not the acts done in that respect were all that the law required to make such election, or passage of such law or ordinance, valid and legal, and establishing the same by a public record thereof, even to the extent of making such record absolute and incontestible evidence of the facts which appear to have been determined thereby from what it is to deprive one accused of the commission of an offense, by reason of such election, law or ordinance, from asserting the unconstitutionality of the law authorizing such election, or passage of such law or ordinance. But, it is an undisputed maxim that estoppels must be mutual, and that, unless a judgment or record is binding and conclusive upon both parties, it is not binding upon either. In the contest of an election such as this, the prosecution by one elector is a prosecution as well for himself as for all other electors of the village, and the defense for the state rather than for the village; and it is the well established rule of the law that where a special method for contesting an election is provided by statute, the legality and regularity of such election and its validity on the points and grounds which may lawfully be tried on such contest, can not be otherwise asserted or impeached. So, upon these and many other considerations, which for want of time we can not now state, this court holds that the alleged unconstitutionality of said so-called "Beal Law" was not and is not a lawful or valid ground of contest in said proceedings before said probate court

or judge; that said probate court and judge were without any power or jurisdiction whatsoever to hear, try or determine that question, in the matter of said contest, and that any and all rulings, findings, holdings, orders, decisions and judgments in the matter of said contest, which are and which affirmatively appear from the record of said proceedings and judgment to be founded upon such grounds of unconstitutionality, at all times were and are *coram non judice* and absolutely void and of no legal force or effect whatsoever, either as between the parties hereto, or as to any other person whomsoever.

But it is contended with great vigor and ability that the probate court, being a court of general jurisdiction, had full authority to determine the question of whether or not it had jurisdiction over the particular subject matter, and that said probate court having, by overruling the motion to strike said ground of the unconstitutionality of the law from the petition, and by proceeding to render judgment on that ground in effect passed upon and decided this question; and that its judgment in that respect can not be collaterally impeached. Again, and somewhat inconsistently with this last position, it is said that the probate court being such court of general jurisdiction, the mayor in the case below and this court in error thereto, must presume that the probate court rendered its final decision, in the contest case, upon some other ground than the unconstitutionality of the law, if this be necessary to sustain said decision that the said election was illegal and invalid and setting the same aside.

With respect to these contentions, it must be conceded that the probate court is a court of general jurisdiction, and that, when it is proceeding within the scope of its general powers, it is presumed to have full jurisdiction to give whatever judgment it renders, until the contrary appears. This presumption applies not only where it appears from the record that the court found and determined that it had jurisdiction, or where the necessary facts to give such jurisdiction are shown by such record, but also where the record is silent as to those matters, either in whole or in part. When so proceeding, its record imports absolute verity and is conclusive in all collateral proceedings as to every matter, fact and thing therein stated, recited or set forth, unless such statements, recitals or matters set forth are necessarily contrary, inconsistent with and opposed to each other; and, in such last mentioned case,

in no other respect, except to the extent that one or more of such statements, recitals or matters set forth can not possibly be true, without another or others being true, can it be disputed or inquired into collaterally. Such record may impeach itself, but it can not otherwise be impeached in any collateral proceeding. But where the record is silent, the fact showing that the court had or had not jurisdiction may be shown by evidence *aliunde* the said record. The rule as to absolute verity of such record is of equal application to the whole and each and every part thereof; and so, where one is directly and absolutely contradictory, inconsistent with and opposed to another, beyond any reasonable reconciliation, they mutually destroy each other, and the record is to be held as silent in these respects. So, in the Am. & Eng. Enc. of Law, 2d Ed., Vol. 17, page .1082, under the paragraph beginning on the preceding page and headed "Jurisdiction Appearing of Record," which treats solely of general jurisdiction, it is well said "But a finding of the court on the question of jurisdiction is conclusive where the record itself shows that the finding is not true, because it is also a rule in regard to the effect of records as evidence that one part of a record may be impeached by another part." But, further, it is the existence of the jurisdictional facts, whether their existence be shown or presumed, that determines the question of whether or not the court has jurisdiction. No court, by holding or expressing an erroneous opinion on the facts, when they are all shown by the record, can clothe itself with power or authority not given it by the Constitution and laws, either expressly or by necessary implication, as an incident to the power expressly conferred. Nor is it true because a court is authorized to hear and determine whether or not certain facts or grounds exist and render judgment according to its findings and determination in that respect, that it may proceed to try the case on other and entirely different grounds, and render a judgment thereon. And, if it does so, and it appears affirmatively from the record that it is so, such judgment is absolutely void. Nor is the fact that its judgment was invoked as well upon grounds of which it had cognizance as of grounds of which it had not, prevent such judgment from being absolutely void and collaterally impeachable; if it appear from the record that its judgment was wholly based upon the grounds of which it had no jurisdiction.

And, further, in the matter of this contest, the probate court was not proceeding within the general scope of its powers, but, in a special statutory matter and proceeding not in accordance with the practice of courts of common law or equity; and in so proceeding no presumption in favor of its jurisdiction arises, but the same must be shown to have existed, either by the record or otherwise, before they can be held conclusive, even in a collateral proceeding.

In support of these conclusions, we refer generally to the article "Jurisdiction," 17 Am. & Eng. Ency. of Law (2d. Ed.) pages 139-185; and especially to the decisions of our own Supreme Court in the cases reported as follows: 3 O., 553-561; 12 O., 254-272; 1 O. S., 369-371; 11 O. S., 219-224; 35 O. S., 550-553; 56 O. S., 540-558.

Applying these rules to the record of the contest case, we find that two of the original grounds being withdrawn, and the so-called first ground (by which the unconstitutionality of the law was alleged), not presenting any question of law or fact within the jurisdiction of the probate court in said proceedings, the case stood on submission to the court exactly as if the remaining grounds had been the only ones presented by the petition. These grounds (which charged the election to be illegal and invalid solely on account of the alleged failure of the council and the mayor to order the election, and provide for its being held in the manner prescribed by this law), were heard, submitted to, and considered by the probate judge who thereupon found and "determined the merits of the proceeding," in these respects (being all the matters and questions submitted to him, whereof he had jurisdiction), in favor of the village and against the contestant. Having done this, the only power remaining in the probate judge or court was to obey the direct command of the statute and render judgment against the contestant for costs. But, notwithstanding such total want of power, the probate judge or court attempted to determine the question of the alleged unconstitutionality of the law, and solely upon the opinion and conclusion that the law was unconstitutional, gave and entered the pretended decision and determination that said election was illegal, invalid and void, by reason of such unconstitutionality of the law under which it was held. All of this appears from said record, not only affirmatively, but so clearly and conclusively that it is beyond contention or dispute. Did the mayor err in refusing to give any

effect to this so-called judgment, as determining the constitution-
ality of the law or the invalidity or illegality of the election? Most
certainly not. To have held it of any effect whatever in these re-
spects would, in our judgment, have been to have committed the
most egregious error in favor of the defendant below and against
the State.

But it is further claimed, even if the pretended judgment of the
probate court be void, that the mayor erred in not himself holding
said law to be unconstitutional, or at least so manifestly unreason-
able that courts should not enforce it.

How this proposition can be maintained, we are at a loss to
imagine. It seems to us, that long before the contest proceedings
in the probate court as well as before the trial before the mayor,
all the substantial objections to the constitutionality of this law
had been virtually decided in the cases of *Gordon* v. *The State* and
*Santore* v. *The State*, 46 O. St., 607-639.

In these cases, the township local option law, which is substan-
tially the same in its provisions as the municipal local option law
now under our consideration (except only that the one applies to
townships and the other to municipalities), was attacked on the
grounds which are relied on in the present case, but the Supreme
Court decided the former law to be in all respects constitutional
and enforced it. In our opinion, the authority of the decision in
the cases last referred to made it the duty of the mayor to hold the
present law constitutional. But, since his decision, the Supreme
Court has expressly held the law in question to be constitutional,
which settles the matter for us, without regard to whatever opinion
we might otherwise have had.

But, it is said that the penalties, which the law authorizes to
be inflicted for the commission of offenses therein described,
are excessive and unreasonable; that on this ground the court ought
to declare the law unconstitutional or refuse to enforce it, and that
this question has not been passed upon by the Supreme Court, and
we are at liberty to do so.

If we assume that the proposition is open for our consideration,
how stands the case? Is the maximum penalty described for the
first offense, namely, a fine of two hundred dollars, within the con-
stitutional prohibition that excessive fines shall not be imposed, nor
cruel or unusual punishments inflicted?

The General Assembly is the judge of this question in the first instance. It is to that body that the Constitution gives authority to create new crimes or offenses and to prescribe the limits within which fines may be imposed and punishments inflicted therefor, and it is only in a case where courts are forced to hold that it has exceeded its powers under this provision of the Constitution that they have any power or authority to interfere with the legislative discretion. It must be a case where the fine is so greatly out of proportion to the magnitude of the offense, or the punishment so cruel or unusual as to shock the common sense of justice or conscience of mankind, that the courts can abrogate the law passed by the legislative body on such grounds. But, even if our powers in this respect was so broad as to authorize us to abrogate the law or refuse to enforce it, because of a difference of opinion between us and the General Assembly as to the proper amount of fine to be allowed to be inflicted in the cases referred to, could we say that it was at all excessive? We do not think so. It simply purports to prescribe limits within which fines may be imposed by the trial court, namely, from fifty to two hundred dollars. The offenses included are not only a single sale, but also the keeping of a place for the sale of such liquors, whether for a longer or shorter time as charged in the affidavit, information or indictment, as the case may be.

If the defendant is aggrieved by the decision of the trial court as to the amount of fine imposed within these limits, he may have the question reviewed by the higher courts on error. But that question is not before us, on the record of this case, as the bill of exceptions does not show all of the evidence before the court below; nor do counsel contend that the amount of fine in this case was excessive provided the law is valid in this respect. It is the common knowledge of mankind that the prohibition, or even a reasonable regulation of the liquor trade, is one of the hardest things to be accomplished.

This law gives to each municipality the right to determine whether or not liquor shall be sold therein as a beverage; and who shall say that, where, as in this case, the electors by a vote of almost two to one have determined against it, the imposition of two hundred dollars upon one who violates and contemptuously ignores the will of the majority of the electors and defies the law, is excessive. We certainly can not.

It is further claimed that the mayor erred in refusing to bind the defendant below over to this court, upon his offer to waive examination and his request to be so recognized; and in proceeding to final trial and judgment in the case.

The Constitution provides that—

"The judicial power of the state is vested in the Supreme Court, circuit courts, courts of common pleas, courts of probate, justices of the peace and such other courts inferior to the Supreme Court, as the General Assembly may from time to time establish."

The General Assembly has established as such inferior courts, the mayor's courts of cities and villages throughout the state and clothed them with full power and jurisdiction, either with or without a jury, as the case may require, to try and render final judgment in cases of misdemeanor committed within their respective counties. There can be no possible doubt that the Legislature had power to this, or that it has done it. The person accused of a misdemeanor has no right, by the Constitution, or otherwise, to have the case against him tried in any particular court. He has no right to insist on an indictment for such an offense before he is required to answer or be put on trial. The offense described in the charge and complaint in this case is an "inferior offense" and not "a capital, or otherwise infamous crime," within the language and meaning of the Constitution. It is a matter within the jurisdiction of the mayor whether he shall permit the case to be tried before him or in his court, or examine the case in his capacity of an examining magistrate and discharge the accused, or bind him over to this or the probate court, as he may deem for the best interest of the public.

Nor was the mayor in error in refusing the demand of the defendant below that he be tried by a jury, or in proceeding to trial and final judgment without one. This question has been determined by the Supreme Court, in the case of *Inwood* v. *The State,* 42 O. S., 186-190, the syllabus of which is as follows:

"A statute which authorizes a penalty by fine only, upon a summary conviction under a police regulation or of an immoral practice prohibited by law, although imprisonment, as a means of enforcing the payment of the fine is authorized, is not in conflict with either Section 5 or 10 of Article I of the Constitution, on the ground that no provision is made for a trial by jury in such cases."

This disposes of all the questions presented to us, and holding as we have already indicated, we find no error to the prejudice of the

defendant below apparent from the record, and the proceedings, judgment and sentence below is accordingly affirmed, the plaintiff in error ordered to pay the costs of this proceeding in error, and the case remanded to said mayor for execution.

*Scott & Peck* and *Oscar C. Beechler*, for plaintiff in error.
*W. B. Wheeler* and *Charles A. Bowersox*, for the State.